IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DALE E. JOLLIFFE,

                Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

                Defendant.

No. 3:14-cv-01935-HZ

OPINION & ORDER

Lisa R.J. Porter
JP Law PC
5200 SW Meadows Rd., Ste. 150
Lake Oswego, OR 97035

        Attorney for Plaintiff

//
//
//

1 - OPINION & ORDER

Billy J. Williams
Acting United States Attorney, District of Oregon
Janie E. Hebert
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97201

Courtney M. Garcia
Special Assistant United States Attorney
Social Security Administration
SSA Office of General Counsel
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiff Dale E. Jolliffe brings this action under the Social Security Act ("Act"), 42 U.S.C. § 405(g), for judicial review of the Commissioner of Social Security's final decision denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. Because it is based on legally sufficient reasons supported by substantial evidence, the Commissioner's decision is affirmed.

## BACKGROUND

    Jolliffe applied for DIB on March 22, 2010, alleging an onset date of September 15, 2006. Tr. 11.[1] The Commissioner denied his application, and Joliffe requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 11. After a hearing in September of 2012, ALJ Timothy Mangrum found Jolliffe was not disabled. Tr. 11–26. Jolliffe appealed, but the Appeals Council denied his request for review, making ALJ Mangrum's ruling the Commissioner's final decision that Jolliffe now challenges in this Court. Tr. 1–3.

---

[1] Citations to "Tr." refer to pages of the administrative record transcript, filed here as Docket No. 12.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Each step is potentially dispositive. At step one, the presiding ALJ determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; if not, the analysis continues. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, the analysis moves to step four, where the ALJ determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his or her past relevant work, the analysis moves to step five, where the ALJ determines whether the claimant can perform other work in the national economy considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden to show disability rests with the claimant at steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f); Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir. 1999). If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

## ALJ DECISION

The ALJ found that Jolliffe last met the insured status requirements of the Act on December 31, 2011. Tr. 13. At step one, the ALJ found that Jolliffe had not engaged in substantial gainful activity during the period between his alleged onset date of September 15, 2006 and his date last insured of December 31, 2011. Tr. 13. At step two, the ALJ found that Jolliffe had the "following severe impairments: degenerative disk disease of the lumbar spine, bilateral degenerative joint disease of the knees, degenerative joint disease of the right ankle, obstructive sleep apnea, and obesity." Tr. 13. At step three, the ALJ found Jolliffe's impairments did not meet or equal a listed impairment. Tr. 18–19. Next, the ALJ found that Jolliffe had the following RFC through the date last insured:

> [C]laimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that he could crawl, crouch, kneel, stoop, and climb. He could frequently balance.

Tr. 29 (some punctuation added). At step four, the ALJ determined that Jolliffe was unable to perform his past relevant work as an adult care provider or fast food worker. Tr. 25. At step five, the ALJ found that, based on his RFC and the relevant Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2, there were jobs that existed in significant numbers in the national economy that Jolliffe could perform. Tr. 25–26. Accordingly, the ALJ found that Jolliffe was not disabled under the Act. Tr. 26.

//

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the decision. Andrews, 53 F.3d at 1039–40. A reviewing court must consider the entire record as a whole and cannot affirm the Commissioner by simply isolating a specific quantum of supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

## DISCUSSION

Jolliffe asks the Court to find error in three different aspects of the ALJ's decision: 1) that the ALJ improperly discounted Jolliffe's credibility because he did not comply with numerous doctors' advice that he lose weight; 2) that the ALJ improperly rejected portions of testimony from Jolliffe's mother, Shirley Owens; and 3) that the ALJ improperly relied on the Medical-Vocational Guidelines in lieu of taking testimony from a vocational expert to find that there were a significant number of jobs that Jolliffe could perform. Plaintiff's Brief ("Pl. Br.") at 18, 20, 23. Jolliffe makes passing reference to other purported errors, such as the ALJ's rejection of medical reports from Dr. Sharf and "other physicians," and that the ALJ's formulation of Jolliffe's RFC is "contrary to law and unsupported by the evidence because it is not based on all the evidence." Pl. Br. at 24–26.

**1. Noncompliance with Treatment & Credibility**

When formulating Jolliffe's RFC, the ALJ was required to consider evidence of Jolliffe's symptoms, including Jolliffe's subjective statements about the intensity, persistence, and limiting effects of his symptoms. As part of that analysis, the ALJ noted that Jolliffe's doctors repeatedly cited "obesity . . . as a key factor in his sleep apnea, right ankle pain, back pain, and knee pain." Tr. 22. The ALJ then discounted the credibility of Jolliffe's statements about those symptoms: "[Jolliffe's] lack of devotion to weight loss detracts from his credibility as to the severity of his pain symptoms and his functional limitations, as he has been told by medical providers that these symptoms and his functional capacity will improve with weight loss." Tr. 22. Jolliffe asserts that the ALJ erred by not applying the correct legal standard in finding he was noncompliant with numerous doctors' recommendation that he lose weight. Pl. Br. at 18.

An ALJ analyzes the credibility of a claimant's testimony regarding his subjective pain and other symptoms in two steps. Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (citation and internal quotation omitted). "The claimant, however, need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." Id. (citation and internal quotation omitted). Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject his testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. Id. (citation and internal quotation omitted).

6 - OPINION & ORDER

The ALJ may consider objective medical evidence, the claimant's treatment history, daily activities, and work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen v. Chater, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ may also employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements by the claimant. Id.

At step one, the ALJ found that Jolliffe's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 20. Jolliffe alleged suffering from debilitating pain in his back and both knees. Tr. 19. He also asserted that he is unable to work because of fatigue caused by obstructive sleep apnea. Tr. 19. His pain, Jolliffe claimed, limited the time he can stand to about ten minutes and the distance he can walk to about twenty-five yards; his fatigue caused issues with absenteeism and daytime drowsiness. Tr. 19–20.

The ALJ found at step two that Jolliffe's statements about the intensity and limiting of effects of his symptoms were not entirely credible. Tr. 20. The ALJ discounted Jolliffe's claims because objective medical evidence did not support his testimony, his activity level was inconsistent with his reports of severe limitations, his symptoms improved with treatment, and he did not follow his doctors' recommendation that he lose weight. Tr. 23–26.

Jolliffe is correct that the ALJ improperly relied on his noncompliance with his doctors' recommendation that he lose weight to discount his credibility. Although a failure to follow prescribed treatment can be a legitimate ground for discounting a claimant's credibility, Social Security regulations and Ninth Circuit law limit an ALJ's "ability to use a claimant's failure to lose weight as a ground for denying benefits or making an adverse credibility finding." Muldoon v. Colvin, No. CV 13-5188-DFM, 2014 WL 4494461, at *3 (C.D. Cal. Sept. 12, 2014) (citing SSR 02–1p, 2002 WL 34686281, at *9; Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007)).

7 - OPINION & ORDER

Before an ALJ can rely on a claimant's failure to follow a doctor's recommendation to lose weight, the claimant must have been found disabled at least in part because of obesity. Dhillon v. Astrue, No. 3:11-CV-01269-JE, 2013 WL 705470, at *9 (D. Or. Jan. 30, 2013) (citing SSR 02–1p; Orn, 495 F.3d at 633–37). Even if the ALJ makes such a finding, a failure to follow treatment is only relevant if "[a] treating source has prescribed treatment that is clearly expected to restore the ability to engage in substantial gainful activity, and [t]he evidence shows that the individual has failed to follow prescribed treatment without a good reason." SSR 02-1p, 2002 WL 34686281 at *9.

Here, Jolliffe has not been found disabled, so the regulations "preclude[] the ALJ from considering the effect of any failure to follow treatment for obesity." Orn, 495 F.3d at 637. Also, there is no evidence in the record that any doctor prescribed a weight-loss regimen, or "clear evidence that the treatment would be successful." Id. (quoting SSR 02-1p, 2002 WL 34686281 at *9). Therefore, Jolliffe's failure to lose weight is not a legitimate reason to discredit his testimony.

This error, however, does not necessarily require the Court to disturb the ALJ's conclusion that Jolliffe's claims are not entirely credible. If there is substantial evidence supporting the ALJ's other reasons for discounting a claimant's credibility, an error as to one reason "does not negate the validity of the ALJ's ultimate [credibility] conclusion[.]" Minter v. Comm'r of Soc. Sec., No. 3:11-CV-00113-KI, 2012 WL 1866608, at *3 (D. Or. May 22, 2012) (quoting Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)).

The ALJ gave several other reasons for his adverse credibility finding, including that the objective medical evidence showed that the degeneration in Jolliffe's knees and lumbar spine were mild, his ankle pain was mild, that his sleep apnea improved with treatment, and that his

reported activities were consistent with the ability to perform sedentary work. Notably, Jolliffe does not challenge the ALJ's decision on any of these grounds. The Court's own analysis of the ALJ's reasoning finds that each is supported by substantial evidence in the record.

Numerous doctors examined Jolliffe's back, knees, and ankles over the years, and all reported mild degenerative changes, normal range of motion, and largely unremarkable x-ray images. See Tr. 525, 531, 561, 609, 611, 844, 877, 897, 906. Jolliffe regularly reported his pain at a three or four out of ten. Tr. 490, 514, 828. The conflicts between these reports and Jolliffe's claims of disabling pain "constitute significant and substantial reasons to find [Jolliffe's] testimony less than completely credible." Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007).

The ALJ also found that Jolliffe's sleep apnea was "significantly improved by positive airway pressure." Tr. 22. The ALJ explained how the objective measures of Jolliffe's sleep apnea improved dramatically after he was prescribed a continuous positive airway pressure ("CPAP") machine. See Tr. 22, 457, 567. The ALJ noted that in 2009, Jolliffe had attendance problems at a vocational training program due to absences attributed to sleep apnea. Tr. 22. Around the same time, Jolliffe got a different machine to help alleviate his sleep apnea symptoms, Tr. 586, and subsequently, Jolliffe's training attendance significantly improved. See Tr. 285–301. The ALJ also noted that Jolliffe had no documented appointments regarding his sleep apnea after September of 2011. Tr. 22. From this evidence, the ALJ concluded that Jolliffe's problems with fatigue caused by sleep apnea were improved with treatment. Impairments that can be effectively controlled with treatment are not considered disabling for the purposes of determining whether a claimant is disabled, and thus it was legitimate for the ALJ to rely on evidence of effective treatment to discount Jolliffe's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir.

2008); Espenas v. Colvin, No. 3:14-CV-00355-HZ, 2014 WL 7405655, at *3 (D. Or. Dec. 30, 2014) (citing 20 C.F.R. § 404.1529(c)(3)(iv) & (v)).

Finally, the ALJ found that Jolliffe's reported activities were consistent with the ability to perform sedentary work. Jolliffe reported caring for his mother, preparing meals, shopping, caring for his personal hygiene, performing chores, and occasionally fishing. The inconsistencies between Jolliffe's claims of disabling pain and fatigue and these reported activities is a legitimate reason for discounting his credibility. Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014).

In sum, the ALJ gave numerous, legally sufficient reasons supported by substantial evidence in the record for discounting Jolliffe's claims. Therefore, the ALJ's error in relying in part on Jolliffe's failure to lose weight as one of those reasons is a harmless one that does not warrant overturning the ALJ's ultimate conclusion about Jolliffe's credibility. Carmickle, 533 F.3d at 1162 (explaining that an error in one reason for discounting credibility is harmless where an ALJ's "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record.").

**2.  Lay Witness Testimony**

Next, Jolliffe asserts that the ALJ "erred in failing to fully credit the observations of [Jolliffe's] mother, Shirley Owens." Pl. Br. at 20. "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted). The ALJ cannot disregard competent lay witness testimony without comment, but the ALJ need only give "reasons that are germane to each witness" to discount lay testimony. Id. (citations omitted).

Ms. Owens described Jolliffe's symptoms, activities, and limitations in two lay witness statements, one she submitted in July of 2009 and another a year later. Tr. 264–71; 351–58. Ms. Owens wrote that Jolliffe had difficulty walking, standing, bending over, stooping, sitting, and reaching because of his back and knee pain. Tr. 351–52. He spent most days watching television, playing video games, and using a computer. Tr. 353. He sometimes went fishing and shopping, and he also performed household chores and cooked, though Ms. Owens said that Jolliffe's back and knee pain limited these activities. Tr. 265–68; 353–55. Ms. Owens stated that Jolliffe suffered from depression, and she described some symptoms of anxiety, Tr. 264; 356–57. She also claimed Jolliffe struggled to concentrate, complete tasks, and get along with others. Tr. 264.

The ALJ "considered" these statements and gave them "some weight." Tr. 23. The ALJ explained that the medical records and Jolliffe's reported activities did not indicate any reaching or sitting limitations. Tr. 23. The ALJ also noted that Ms. Owens's report conflicted with evidence in the record that Jolliffe successfully completed an occupational certification program, during which he was noted to possess good general office skills. Tr. 23.

"The ALJ can reject lay witness testimony to the extent that it conflicts with other testimony, the record of the claimant's activity or the medical evidence." Graybeal v. Astrue, No. 3:10-CV-06387-PK, 2011 WL 6019434, at *9 (D. Or. Nov. 2, 2011) (citing Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir.2001)). The ALJ pointed out several ways in which Ms. Owens's claims conflicted with other evidence in the record. That is a legitimate and germane reason to discount her statements. Also, Ms. Owens's report is largely duplicative of Jolliffe's own testimony which, as explained above, the ALJ found was not entirely credible. "[W]hen a family member's testimony mirrors the plaintiff's own complaints, which the ALJ has already found not credible, the ALJ has vicariously provided

11 - OPINION & ORDER

germane reasons for rejecting the family members' testimony." Nelson v. Astrue, No. CIV. 10-18-MO, 2011 WL 39826, at *6 (D. Or. Jan. 5, 2011) (citing Valentine, 574 F.3d at 694).

The ALJ's conclusion that Ms. Owens's testimony was entitled to "some weight" is supported by several germane reasons, and the Court finds no error.

### 3. Medical Evidence

Jolliffe argues that the ALJ "improperly rejected the opinion from examining doctor, Dr. Sharf, and [Jolliffe's] other treating sources [] by presenting medical evidence in a one-sided fashion, without providing the medical evidence favorable" to his case. Pl. Br. at 24.

There are three sources of medical opinion evidence in Social Security cases: treating physicians, examining physicians, and non-examining physicians. Valentine, 574 F.3d at 692 (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. The ALJ can reject the uncontroverted opinion of a treating or examining physician only for "clear and convincing reasons" supported with substantial evidence in the record. Orn, 495 F.3d at 632 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Even if a treating or examining doctor's opinion is contradicted by another doctor, the ALJ can reject it only by providing "specific and legitimate reasons" that are supported by substantial evidence. Id.

Dr. Sharf examined Jolliffe in March 2010 as part of Jolliffe's claim for service-related depression through the Veterans' Administration.[2] Dr. Sharf took notes of Jolliffe's medical and psychiatric history, made observations about Jolliffe's mental status, and wrote a paragraph about his impression of Jolliffe's mental health. Tr. 676–79. The ALJ analyzed Dr. Sharf's

---

[2] Jolliffe served in the military from approximately 1987 to 1992. Tr. 248.

12 - OPINION & ORDER

report, along with numerous other reports from examining psychologists in the record, while evaluating whether Jolliffe's depression was a severe impairment at step two. Tr. 17, 18. The ALJ summarized Dr. Sharf's report as follows:

> In March 2010, [Jolliffe's] mental disorder was examined in regards to his compensation and pension through the VA. He again attributed his depression to his physical symptoms and other situational stressors. He exhibited free and spontaneous speech, logical and goal-directed through process, and intact memory, attention, and concentration. He reported that he was able to cook, drive, manage his finances, and perform [] most of his daily activities. His only noted functional limitations were physical. Dr. Sharf, the examining psychologist, noted that [Jolliffe] had been able to complete an occupational certification program in 2009 despite his physical and psychological symptoms. He diagnosed [Jolliffe] with dysthymia, and assigned him a GAF score of 68.

Tr. 17. Later, the ALJ gave "some weight" to Dr. Sharf's GAF score, noting it was "consistent with mild symptoms and mild difficulty in social occupation, or school functioning." Tr. 18.

After summarizing and analyzing the other mental health evidence in the record, the ALJ found that Jolliffe's "GAF scores, psychological findings, and reported activities indicate that his depression causes minimal, if any impact on his occupation functioning." Tr. 18. The ALJ concluded that Jolliffe's "depression does not cause him any functional limitation and . . . it is therefore not a severe impairment." Tr. 18.

Jolliffe's argument that the ALJ "improperly rejected" Dr. Sharf's opinion is without merit. First, the ALJ did not reject Dr. Sharf's report at all. The only weight the ALJ specifically attributed to any part of Dr. Sharf's report was "some weight" to the GAF score of 68. A GAF score of 61–70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental

13 - OPINION & ORDER

Disorders ("DSM–IV") 34 (4th ed. 2000) (emphasis omitted). That definition from the DSM-IV is consistent with the ALJ's conclusion that Jolliffe's depression caused "minimal, if any, impact on his occupational functioning," Tr. 18, and the Court finds no error. See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010) (finding no error in the ALJ's RFC formulation where it incorporated a treating physician's observations).

Second, even if Dr. Sharf's report is somewhat conflicting in its description of Jolliffe's symptoms, the ALJ did not err by considering Dr. Sharf's report in the context of the full record of Jolliffe's depressive symptoms and concluding that Jolliffe's depression was not severe. Dr. Sharf wrote that Jolliffe "spoke freely and spontaneously throughout the session," was "correctly oriented to person, place, time and purpose," that Jolliffe's "thoughts were logical and goal-directed," and that there "were no signs of major psychopathology." Tr. 678. Jolliffe's "affect was constricted, and mood was neutral," his "[a]ttention, concentration, and memory were intact," and he "was able to abstract adequately on proverbs." Tr. 678. Jolliffe reported the ability to conduct his daily activities and manage his own money without difficulty. Tr. 678. Dr. Sharf noted Jolliffe's psychosocial stressors were "medical, social relationships, occupational," and noted Jolliffe's Axis V current GAF was 65.  Dr. Sharf concluded his report by assessing Jolliffe's depression:

> Mr. Jolliffe had a preexisting depressive condition caused by his abusive childhood. He reported no depressive symptoms up until approximately one year ago. It is at least as likely as not that the veteran's service-connected knee pain has been a mild aggravation to his depression. Mr. Jolliffe has several other medical conditions which are also most likely causing depressive symptoms in the veteran. He talked several times about sleep apnea and his back problems, which also exacerbate his depression. His GAF related to his service-connected depression is 68.

Tr. 679.

14 - OPINION & ORDER

The ALJ also examined several other medical reports in the record. Tr. 16–18. First, the ALJ analyzed a May 2007 report from examining psychologist Dr. Sack. The ALJ accurately summarized Dr. Sack's report, and noted that Dr. Sack assessed Jolliffe's GAF score at 75, "indicating that [Jolliffe's] symptoms were found to be transient and expectable reactions to psychosocial stressors with no more than slight impairment in social, occupational, or school functioning." Tr. 16, 563–66. Similarly, the ALJ examined and summarized a January 2010 report from Dr. Rahe, who described largely benign psychological signs, and assigned Jolliffe a GAF score of 65. Tr. 16–17, 705–08.

The ALJ then went on to describe other evidence in the record that showed Jolliffe's depression improved with treatment and that his depression did not interfere with his social or occupational functions. Tr. 17–18. Finally, the ALJ examined reports from two state agency psychological consultants who also concluded that Jolliffe's depression was mild and not the cause of any functional limitations. Tr. 18. All of these reports support the ALJ's conclusion that Jolliffe's depression was not a severe impairment at step two. Jolliffe offers no argument for why the ALJ's analysis of these reports was in error. The Court's own review of the record shows that the ALJ applied the correct legal standard and supported his conclusion with substantial evidence in the record; that is all the law requires. Valentine, 574 F.3d at 690.

To the extent that Dr. Sharf's report conflicted to some extent with other evidence in the record, it is the up to the ALJ to evaluate the evidence and resolve conflicts and ambiguities in the medical record. Tommasetti, 533 F.3d at 1041–42. Jolliffe's argument about the ALJ's analysis of Dr. Sharf's report is merely an alternative interpretation of the record which is not sufficient to overturn the ALJ's well-supported conclusions. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

Finally, Jolliffe vaguely references the ALJ's rejection of "other treating sources," but he does not develop the argument any further. Pl. Br. at 24. Accordingly, that argument is waived. See Carmickle, 533 F.3d at 1161 (declining to consider a matter that was not "specifically and distinctly argued in an . . . opening brief."); Locastro v. Colvin, No. C14-5499TSZ, 2015 WL 917616, at *2 (W.D. Wash. Mar. 3, 2015) ("The Court may deem arguments that are unsupported by explanation to be waived.") (citations omitted); Demelo v. Colvin, No. 1:13-CV-1247 BAM, 2015 WL 1320213, at *4 (E.D. Cal. Mar. 24, 2015) ("Given that Plaintiff has failed to properly develop the argument . . . . the Court considers [it] waived and will not consider this issue.") (citing Independent Towers of Washington, 350 F.3d 925, 929 (9th Cir. 2003)).

### 4. Jolliffe's RFC

Jolliffe makes a similarly undeveloped argument that the ALJ's "RFC is contrary to law and unsupported by the evidence because it is not based upon all the evidence." Pl. Br. at 25. To the extent that Jolliffe is arguing that the ALJ should have included Jolliffe's alleged nonexertional limitations, such as his depression, fatigue, and headaches in his RFC formulation, that argument is unavailing.

The ALJ analyzed Jolliffe's claim that his headaches limited his ability to work at step two. Tr. 15–18. At step two, the claimant bears the burden to show the existence of a severe impairment or combination of impairments—medically determinable conditions that have more than a minimal effect on the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii); Tackett, 180 F.3d at 1099. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 C.F.R. § 404.1508. According to the regulations, "an impairment is not severe if it does not significantly limit [the

claimant's] physical ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 404.1521(b). An impairment is "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988); Colter v. Colvin, No. 3:14-CV-00896-SI, 2015 WL 2250460, at *5 (D. Or. May 13, 2015).

The ALJ found Jolliffe's headaches were not a severe impairment in part because Jolliffe's "own description of the frequency of his headaches suggest[ed] that they only occasionally interfere with his daily functioning." Tr. 15. "At the hearing," the ALJ explained, Jolliffe stated that he had severe headaches approximately twice per month, each lasting about three hours. [Jolliffe] stated that he also had mild headaches throughout the month, which he asserted he was able to ignore." Tr. 15. The ALJ then found that Jolliffe's hearing testimony about his headaches conflicted with evidence in the record because Jolliffe repeatedly denied having headaches during medical appointments in July 2009, November 2009, February 2010, and February 2011. Tr. 15, 1159, 1220, 1239, 1263, 1280. The ALJ's conclusion that Jolliffe "[did] not have a medically established pattern of severe headaches" is thus supported by substantial evidence in the record and the Court finds no error.

As mentioned above, the ALJ also found at step two that Jolliffe's depression was not severe. Without repeating the analysis set out above about Dr. Sharf and the other doctors who analyzed Jolliffe's depression, the Court finds that the ALJ applied the correct legal standard and supported his conclusion about Jolliffe's depression with substantial evidence in the record. And also as explained above, the ALJ analyzed Jolliffe's complaints of fatigue caused by sleep apnea

and properly discounted those claims because the evidence in the record showed his sleep apnea improved with treatment.

The ALJ was not required to incorporate into the RFC "medical conditions or impairments that the ALJ found neither credible nor supported by the record[.]" Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). Therefore, the ALJ did not err in formulating Jolliffe's RFC without including his alleged fatigue, headaches, or depression.

### 5. Medical-Vocational Guidelines

Finally, Jolliffe argues that the ALJ erred at step five by relying solely on the Medical-Vocational Guidelines to conclude there were jobs in significant numbers in the national economy that Jolliffe could perform. Pl. Br. at 23. Jolliffe argues that his nonexertional limitations such as depression, fatigue, and headaches were sufficiently severe to require the ALJ to take testimony from a vocational expert. Pl. Br. at 24.

"At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work that exists in significant numbers in the national economy after considering the claimant's RFC, age, education, and work experience. Larson v. Colvin, No. 3:13-CV-01643-MC, 2015 WL 225819, at *8 (D. Or. Jan. 16, 2015) (internal quotation marks omitted) (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)). "To assist in the step-five determination, the Social Security Administration established the Medical–Vocational Guidelines (the grids), which 'consist of a matrix of [the four factors] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy.' " Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (quoting Heckler v. Campbell, 461 U.S. 458, 461–62 (1983)). "When the grids match the claimant's qualifications, the guidelines direct a conclusion as to whether work exists that the

claimant could perform." Id. (quotation and citation omitted). If the grids do not match the claimant's qualifications, "the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations." Id. (citations omitted). "An ALJ may use the grids without VE testimony if a claimant's non-exertional limitations are not 'sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations.' " Larson v. Colvin, No. 3:13-CV-01643-MC, 2015 WL 225819, at *9 (D. Or. Jan. 16, 2015) (quoting Hoopai, 499 F.3d at 1075).

The ALJ found that Jolliffe "had the residual functional capacity to perform sedentary work . . . except that he could crawl, crouch, kneel, stoop, climb [and] frequently balance." Tr. 19. As previously explained, the ALJ did not err formulating Jolliffe's RFC without incorporating into it any limitations resulting from his claimed headaches, fatigue, or depression. The ALJ determined that Jolliffe's credible limitations fell within the grids, and found that he was not disabled because he could perform a full range of sedentary work. Tr. 25–26. SSR 96-9p provides that "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." 1996 WL 374185 at *7. Further, a "restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." Id. at *8. Since Jolliffe's limitations do not have a significant effect on his ability to perform sedentary work, the Court finds that the ALJ did not err in relying on the grids alone at step five. Hoopai, 499 F.3d at 1075–76 ("a vocational expert

19 - OPINION & ORDER

is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid.").

## CONCLUSION

For the reasons stated, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this __24__ day of _____January_____, 2016.

_____Marco Hernandez_____
MARCO A. HERNÁNDEZ
United States District Judge

20 - OPINION & ORDER